IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE M. DURHAM, HN-4374,  )
    Petitioner, )
     )
    v. ) 2:11-cv-719
     )
DAVID A. VARANO, et al., )
    Respondents. )

MEMORANDUM and ORDER

Mitchell, M.J.,

    George M. Durham, an inmate at the State Correctional Institution at Pittsburgh has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis. For the reasons set forth below the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

    Durham is presently serving a life sentence imposed following his conviction by a jury of first degree murder at No. 1860 of 2007 in the Court of Common of Beaver County, Pennsylvania. This sentence was imposed on March 14, 2008.[1]

    An appeal was filed in the Superior Court in which the issues presented were:

I.    Did the trial court err in denying Appellant's request for a jury charge on voluntary manslaughter?
II.    Did the trial court's reference to Appellant as a "criminal" in the presence of the jury, warrant a new trial?
III.    Did the Commonwealth make inappropriate remarks to the jury tainting the jury's judgment as to Appellant's burden of proof?
IV.    Was Appellant denied the opportunity to fully cross-examine a witness, Crystal Brown?
V.    Was the evidence sufficient to support Appellant's conviction for murder in the first degree?
VI.    Was the verdict against the weight of the evidence presented at trial?[2]

On April 21, 2010, the judgment of sentence was affirmed.[3]

---

[1] See: Petition at ¶¶ 1-6.
[2] See: ECF No.68 at pp.12-13.

1

Durham filed a post-conviction petition on September 7, 2010 which was supplemented by counsel. Following a hearing the petition was dismissed on January 14, 2013.[4] An appeal was filed in which the issues presented were:

> I. Whether prior legal trial counsel was ineffective in all aspects related to an alibi defense, i.e., in failing to properly prepare for, effectively argue in closing, and simply request an instruction on an alibi defense?
> II. Whether prior legal trial counsel was ineffective in failing to properly correct or otherwise impeach the false trial testimony of Irwin Smith regarding his claimed first observance of defendant on the day of the decedent's death?
> III. Whether prior legal trial counsel was ineffective in failing to properly protect defendant from improper cross-examination by forcing him to comment on the veracity of every other witness in the case?
> IV. Whether prior legal trial counsel was ineffective in failing to object to and request a curative instruction on improper victim impact evidence?
> V. Whether prior legal trial counsel was ineffective in failing to request the trial court to properly and adequately charge the jury and/or failing to object to the trial court improperly and inadequately charging the jury regarding several topics?
> VI. Whether prior legal counsel was ineffective in failing to challenge the jury being permitted to be in possession of … all expert reports admitted into evidence during deliberations?
> VII. Whether prior legal trial counsel was ineffective in failing to request a mistrial and new jury pool and/or object to the inadequacy of the curative instruction after the court referred to defendant as a criminal?
> VIII. Whether the individual and cumulative prejudice caused by the ineffective (in)actions of prior legal trial counsel compromised the fairness and integrity of the trial warranting a new trial?[5]

On May 9, 2014 the denial of post-conviction relief was affirmed,[6] and allowance of appeal was denied on January 21, 2015.[7]

The original habeas petition was filed in this Court on June 2, 2011. Petitioner then requested that proceedings be stayed pending exhaustion of his state court remedies (ECF No. 3). At petitioner's request the proceedings were reopened on March 11, 2015, and on March 12, 2015 Durham filed an amended petition (ECF 47). Finally, on June 30, 2015, an answer was

---

[3] See: ECF No.68 at p.1.
[4] See: ECF No.69 at p.7.
[5] Id. at pp.7-8 (citing to petitioner's brief on appeal).
[6] Id. at p.1.
[7] See: https://ujsportal.pacourts.us at Beaver County Criminal Docket CP-04-CR-1860-2007 at p.30.

filed (ECF No.59).[8] The amended petition[9] contains twenty alleged grounds for relief, however, on July 27, 2015 Durham graciously moved to withdraw grounds fourteen, fifteen, sixteen, seventeen and eighteen "because Petitioner does not want to waste this Court's and the Superior Court's time with issues that after further review have no real substance."[10] On August 17, 2015 Durham filed a traverse consisting of 82 pages plus attached exhibits (ECF No.71).

Thus, the remaining issues are:

1. A violation of petitioner's right to due process and equal protection against double jeopardy arising out of the seizure of his car.
2. Improper jury instructions.
3. Ineffective assistance of counsel for failing to request an instruction on the alibi defense.
4. Same issue.
5. Ineffective assistance of trial counsel for failing to impeach the "perjured" testimony of Commonwealth witness Irwin Smith.
6. Ineffective assistance of trial counsel to properly prepare an alibi defense.
7. Ineffective assistance of trial counsel in permitting the petitioner to be extensively cross-examined about the credibility of Commonwealth witnesses.
8. Ineffective assistance of counsel for failing to request jury instructions on confession or admissions, evidence of other offenses, alibi evidence, absence of motive, consciousness of guilt resulting from petitioner's cooperation with the police, witnesses use of drugs and/or alcohol and the number of witnesses.
9. Ineffective assistance of trial counsel for failing to object to permitting the jury to review the experts' evidence exhibits during deliberation.
10. Ineffective assistance of counsel for permitting Commonwealth witness Irwin Smith to testify about his first encounter with the petitioner on the day of the crime.
11. Ineffective assistance of counsel for failing to object or move for a mistrial when Commonwealth witness Crystal Brown continued in her presentation of unsolicited prejudicial testimony.
12. Ineffective assistance of trial counsel for failing to object to the court's description of petitioner as a "criminal defendant" to the original jury pool.

---

[8] The respondent is reminded that there are very specific requirements for an answer set forth in 28 U.S.C. §2254. In addition, the respondent is reminded that any matter which is deemed necessary for consideration by the Court must be made a part of the official record and not left for the Court to discover. We take issue with the fact that the response does not in any way assist the Court; is totally devoid of any record supports for the positions taken and is equally lacking is case law support for the arguments made. Where, as here, the petition is essentially unintelligible due to its rambling and disconnected nature, and the response does not provide any assistance to the Court, the entire burden of reviewing the petition falls on the Court without any assistance from the parties.

[9] The instant amended petition is112 pages long, and as observed by the Superior Court in its April 21, 2010 Memorandum (ECF No.68 at p.1), "this appeal is affected by the complex procedural history, to which Appellant's *pro se* filing have contributed undue confusion."

[10] See: ECF No.65. The request was granted on August 6, 2015 (ECF No.66).

3

13. Ineffective assistance of trial counsel resulting from his failure to object to the jury instruction on flight permitting a consideration of consciousness of guilt when there was no evidence indicating flight…
19. Ineffective assistance of counsel for failing to object to victim impact testimony
20. Cumulative effect of the ineffective assistance of counsel.

The background to this prosecution is set forth in the Superior Court's May 9, 2014 Memorandum (ECF No.69 pp.1-3):

Appellant was charged with the murder of his then girlfriend, Mary Ann Brown. Appellant pled not guilty and was tried in a jury trial.

[The following facts were adduced at trial.] On the afternoon of August 17, 2007, the victim, Mary Ann Brown, Mr. Irwin Smith, and Mr. James Little John were building a swimming pool deck at a home on Second Avenue in Aliquippa, Pennsylvania. Later in the evening, Mr. Smith returned to the job site to clean up and then proceeded to a nearby friend's house on First Avenue, where he sat on the outdoor step. While seated on the step, Mr. Smith heard Appellant and the victim arguing behind a row of hedges and outside of Mr. Smith's view. He testified that he heard the victim say "Why did you stab me? You stabbed me," and saw Appellant's car drive away shortly thereafter. The following day the victim's body, containing multiple stab wounds, was discovered on First Avenue. Police officers apprehended Appellant on August 18, 2007 and charged him with criminal homicide.

At trial, Wanita Hooks testified that on August 17, 2007, Appellant informed her that he was looking for the victim, that he was angry with her, and that he was going to hurt her when he found her. Later that day, Ms. Hooks encountered the victim and warned her of Appellant's threats. She testified that later that night she encountered Appellant again, at a friend's house, and that Appellant's hand was injured and bleeding.

On August 19, 2007, police officers found Appellant's car in a parking lot outside the Outkast bar, with blood on the door. The police officers also found a knife in close proximity to the vehicle and bloody clothes in a nearby dumpster.

Annette West, an employee at the Outkast bar, testified that on the evening of August 17, 2007, Appellant entered the bar wearing a shirt covered in blood and socks, but no shoes or pants, and ordered a drink. She testified that his hand was bleeding, that he told her that he had been "jumped," and requested that she call his brother. When his brother arrived, Ms. West went outside and observed a pair of jeans and tennis shoes beside Appellant's car.

Another witness, Roseann Johnson, testified that on the morning of August 18, 2017, she encountered Appellant at a friend's house and that his hand was

bleeding. When she asked Appellant what happened, he stated, "I think I killed her," referring to Mary Ann Brown.

Dr. James Smith, a forensic pathologist who conducted an autopsy on the victim, testified that the victim sustained a total of nineteen stab wounds, seven on her chest, some [of] which pierced her lungs and exited from her back, as well as stab wounds to her arm, face, and thighs. Mr. Timothy Gavel, a forensic scientist additionally testified that the victim's shirt and a bloodstain on the street near the body contained Appellant's DNA.

Appellant testified on his own behalf, and asserted that he was not the perpetrator. He stated that prior to the victim's death he had decided to end his relationship with her, and packed up her belongings and placed them in his car. On August 17, 2007, he encountered the victim on the street and stopped his car to inform her that he had her clothes. She requested that he take her clothes to her daughter's house nearby. But he refused and the victim became upset and walked away from him. He followed her in his car for some distance, then exited his vehicle and attempted to remove her bag of clothes from the car whereupon the victim cut him on his hand. He pushed her, reentered his vehicle, and drove away. He testified that he did not kill Mary Ann Brown.

On March 14, 2008 the jury impaneled in this case returned its verdict, finding Appellant guilty of Murder in the First Degree. On April 23, 2008, the trial court imposed sentence, as required by law…

Durham's first issue concerns the failure of the trial court to order the return of his seized vehicle. In <u>Harrington v. Richter</u>, 562 U.S. 86, 91 (2011) the Court wrote "the writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Clearly the purpose of habeas corpus is not to appeal a denial of a motion for the return of seized properly and this issue will not be further discussed.

Durham next contends that he was denied due process as a result of the jury instructions. Due to the gross and unnecssary complexity the petitioner has interjected into the case without any clear recitation of his specific claims, we can only address this issue in the same context as the Superior Court did on the direct appeal (ECF No.68). That is, that the trial court erred in failing to instruct the jury on voluntary manslaughter. As the Superior Court observed, voluntary manslaughter requires a demonstration of action taken during the "heat of passion," and that the petitioner's testimony that he had not committed the assault contradicts any demonstration of an act of passion. As such the Superior Court concluded that under Pennsylvania law there was no basis for such an instruction.

5

In reviewing a claim that the jury instructions were inadequate they must be reviewed as a whole. Estelle v. McGuire, 502 U.S. 62 (1991). In the present case we have reviewed those instructions (TT. 3/13/08 pp.828-843) and observe that the jury was instructed on both first and third degree homicide and there was no record support for a claim of voluntary manslaughter. Thus, reviewing the charge as a whole there is not basis demonstrated which would warrant relief here.

The remaining issues allege ineffectiveness of counsel. In Strickland v.Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations

6

must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010). This is a very difficult burden to meet. Harrington v. Richter, 131 S.Ct. 770 (2011).

Thus, to address the allegations of the petitioner, we once again turn to the analysis of the Superior Court in affirming the denial of post-conviction relief (ECF No. 69), since any other issues which might be obscured in the petition have not been raised in the state courts and are procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

The first issue which Durham raised in his post-conviction appeal was "that trial counsel was ineffective for failing to pursue an alibi defense." (ECF No.69 p.9). At trial prosecution witness Irwin Smith testified that the victim worked for him and they finished working between 7:30 and 8:00 p.m. (TT. p.229); that he heard her arguing with the petitioner behind some hedges and she said "why did you stab me?" (TT. 221-222) and that he observed the petitioner's vehicle "flying by" shortly thereafter (TT.223-224). Petitioner argues that since Smith's testimony regarded events which occurred about 8:00 p.m. and other witnesses placed him at the Outkast bar at the time the criminologist estimated the homicide occurred, i.e. between 9:00 p.m. and 9:30 p.m. his alibi defense should have been pursued. At the post-conviction hearing, defense counsel testified that he was very familiar with the case and actively pursued the defense (PCRA 4/30/12 and 9/24/2012 pp. 40, 44); that because there was not a definite time of death, it was difficult to construct an alibi defense and he opted to present testimony from witnesses who observed the petitioner around the time of the crime (PCRA pp 45-46); that Smith's testimony related to his having overheard the victim and petitioner arguing, and the victim speaking of stab wounds petitioner had inflicted upon her as well as his visual observation of the petitioner speeding from the crime scene as well as Smith's subsequent observation of the petitioner about 8:15 p.m.(PCRA pp.47-48,52, 58-59, 65); that his defense strategy was that petitioner could not have been at the crime scene at the time Smith testified about (PCRA p.49); that he sought to demonstrate that Smith had a motive to testify against petitioner and as a result he elected to challenge his credibility (PCRA p.52, 53, 67); that the petitioner testified about his whereabouts the evening of the crime (PCRA p.54) and that the foundation of his defense was to focus on the lack of forensic evidence and the inconsistent testimony and not focus on the confusing time line (PCRA pp.71, 94, 115, 123); that he had to proceed very cautiously with the defense because of the victim and petitioner's past violent history (PCRA p.119) and that it was difficult to present an alibi defense "because the facts were all over the place…" (PCRA p.123).

Additionally, during his closing argument, defense counsel argued that despite its confusion, the conflicting testimony demonstrated that the alleged animated exchange between petitioner and victim occurred at the same time when the petitioner could be placed in the Outkast bar. (TT. pp. 746-747). Defense counsel's strategic determination to cast doubt on the testimony of Smith rather than argue an alibi defense and assume the inherent risks of such a

defense under the circumstances was not unreasonable and does not demonstrate ineffective assistance. Rolan v. Vaughn, supra.

The next issue which the petitioner raises concerns counsel's cross-examination of Smith during the trial. At trial Smith testified that he was working at his sister-in-law's home and the victim was assisting him (TT.pp.216-216); that the petitioner originally appeared at the job site between 2:30 p.m. and 3:00 p.m. (TT.p.217); that Smith completed the job between 7:30 p.m. and 8:00 p.m. (TT.216); that the petitioner returned to the job site at the end of the job (TT. p.229); that he heard the victim and the petitioner arguing and she spoke about him stabbing her (TT.pp.229-223, 243-253) and that thereafter he observed the petitioner "flying" away in his car (TT.pp.223-224, 242-245, 246). Because other witnesses placed the petitioner at the Outkast bar at the same time Smith placed him at the crime counsel was attempting to interject a credibility issue regarding this critical witness' testimony. As a matter of sound trial strategy this tactic does not give rise to a claim of ineffectiveness. . Rolan v. Vaughn, supra.

The third claim is based on Durham's allegations of ineffectiveness as a result of counsel's failure to object to petitioner's cross-examination when he was asked to comment on the truthfulness of prosecution witnesses whose testimony conflicted with his.

At trial, the petitioner elected to testify and related that he had a romantic relationship with the victim (TT.pp.657,697); that they had separated and he had her belongings in his car (TT.pp.659-661); that he met with the victim between 7:30 pm and 8:00 pm (TT.pp.666); that he did not exit is car until he went to remove the victim's clothing from his car (TT.pp.666,668); that the victim was agitated and as he exited his vehicle the victim cut his hand (TT.pp.668-669); that he shoved the victim, entered his car, left the scene and proceeded to the Outkast bar (TT.pp.670,672); that he changed from his bloody clothes before going into the Outkast (TT.675,702); that he told the barmaid that he had been assaulted (TT.676); that he spent the night at a friend's (TT.pp.680-683); that he never told anyone about the incident with the victim (TT.pp.685); that the next day the victim's daughter, Crystal Brown related that she had spoken to her mother at about 10:00 pm (TT.p.687); that when he learned of the victim's death he panicked and was too scared to call the police (TT.pp.688, 689); that he had also told the police that he had been mugged (TT.p. 694) and that he did not kill Brown (TT.p.697).

On cross-examination, petitioner conceded that he knew Smith was in a relationship with the victim (TT.p.698); that the prosecution witnesses were either lying or did not correctly

9

remember things (TT.pp.699,700,703,705,706); that he had never seen the murder weapon prior to trial (TT.711) and that he lied to everyone about being assaulted (TT.pp.708-709). It is the testimony regarding other witnesses' credibility to which Durham contends defense counsel should have objected.

The admissibility of evidence is determined by state law. Swarthout v, Cooke, 131 S.Ct. 859, 861 (2011). In reviewing this issue, the Superior Court observed that:

> [A] majority of jurisdictions that have addressed this issue have held that asking a defendant whether other witnesses were lying is categorically improper… we conclude that Pennsylvania is a minority jurisdiction on this issue. While asking "were they lying" is generally improper, it may be permissible under the specific circumstances of a given case. As such, "were they lying" questions are permissible when the defendant's testimony directly calls the credibility of other witnesses into question.
>
> Applying this rule to the case *sub judice*, we note that Durham's testimony at trial directly contradicted that of all the Commonwealth's witnesses. Accordingly, the prosecutor's question was permissible. Thus, Durham has failed to establish the first prong for ineffectiveness… (citations omitted).[11]

Accordingly, as a matter of state law there is no basis for concluding that this allegation provides a basis for federal relief. Swarthout v, Cooke, supra.

Petitioner's next basis for seeking relief is his claim that counsel was ineffective for failing to object to or request a curative instruction regarding the testimony of the victim's daughter regarding the impact of her mother's death.

At trial, Crystal Brown testified that she last saw the victim about 8:45 pm on the night of the crime (TT.p.279) and that her children ask why did "Pap-pap [the petitioner] kill … Nana"(TT.p.261). During this testimony defense counsel asked the court to caution the witness about her gratuitous prejudicial comments (TT.p.270) and the prosecutor agreed to do so (TT.p.271).

At the post-conviction hearing, trial counsel testified that Crystal Brown was a hostile witness (PCRA p.127) and that he was aware of the fact that the Commonwealth had other potential witnesses who would testify about the petitioner's propensity for violence (PCRA p. 129); that at trial he requested the court to admonish her on her gratuitous comments (PCRA pp.

---

[11] See: ECF No 69 at pp. 11 -14.

324,371-372) and that he did not move for a mistrial because he believed the case was progressing favorably (PCRA. p.325);

Thus, as a matter of trial strategy, counsel's decision to request an admonition to the witness was eminently reasonable and as a result, this allegation does not provide a basis for relief here. Rolan v. Vaughn, supra.

In his next issue, Durham contends that counsel was ineffective by failing to request jury instructions on confession or admissions, evidence of other offenses, alibi evidence, absence of motive, consciousness of guilt resulting from petitioner's cooperation with the police, witnesses use of drugs and/or alcohol and the number of witnesses. The Superior Court observed:

> Durham argues that trial counsel was ineffective for failing to request various jury instructions that were allegedly justified by the evidence at trial. Assuming, arguendo, that these instructions were justified, and that trial counsel did not have a reasonable strategy for failing to request them, we conclude that the absence of these instructions could not have prejudiced Durham. The totality of evidence at trial, and specifically the fact that the murder weapon, covered in the victim's blood, was found within feet of Durham's car, is such that we are unconvinced that the requested jury instructions could have had an impact on the outcome of the trial. Accordingly, we conclude that Durham's fifth issue on appeal merits no relief.[12]

When called upon to review the jury instructions federal habeas corpus courts must look at the instructions as an entirety. Estelle v. McGuire, 502 U.S. 62 (1991). We have done so, and conclude that the instructions were delivered in an entirely neutral fashion and specifically discussed evaluation of witnesses' testimony, credibility, flight and consciousness of guilt (TT.pp.814-821); that counsel had no basis to challenge the court's instruction on consciousness of guilt (PCRA pp..332-326, 338, 374); that his basic trial strategy was to challenge the credibility of the prosecution's witnesses (PCRA pp.368-370); that he had no basis for filing any suppression motions (PCRA p.376) and that he did not discuss an alibi defense with the defendant (PCRA p.369). As previously discussed counsel explained why the other requests which the petitioner raises, were either improper or not a part of his trial strategy. For this reason, he cannot be deemed ineffective.

---

[12] See: ECF No.69 at p.15.

Durham next contends that counsel was ineffective for not objecting to written expert reports being permitted to be in the possession of the jury during deliberations. Pennsylvania Rule of Criminal Procedure 646 permits the jury with specific exceptions not relevant here to have "such exhibits as the trial judge deems proper". In the instant case the Superior Court observed "Durham does not identify any specific aspects of those reports that unfairly prejudice him."[13] The purpose of the Rule is to prevent placing undue emphasis on evidentiary materials. If no such showing is made there is no basis for objection. Com. v. Barnett, 50 A.3d 176 (Pa.Super.2012) leave to appeal denied 619 Pa. 684 (2013). Thus, counsel's failure to object on a matter of Pennsylvania evidence, does not provide a basis for relief here. Swarthout v, Cooke, supra.

Petitioner next argues that counsel was ineffective for failing to request a new jury pool when in its opening, the Court referred to petitioner as a criminal. During the process of jury selection, the court explained that "the Commonwealth of Pennsylvania has charged him [Durham] with one count of murder (TT.p.12) and specifically,

> I will caution you of certain constitutional protections, which Mr. Durham has in this case as any criminal brought before the Court has in any case of this nature… the Commonwealth has charged him with a criminal offense, but that is not evidence that he is, in fact, the individual who committed the offense or that he is guilty of this offense… Mr. Durham, just like every criminal Defendant under our constitution is presumed to be innocent of this charge…TT.pp.18-19).

Counsel's failure to object to this introduction provides the basis for the petitioner's claim of ineffective assistance of counsel.

This passing reference to petitioner as a criminal defendant, a matter which should have been readily apparent to the *venire* was immediately clarified by the court who instructed that a criminal charge is nothing more than an allegation and every criminal defendant is presumed innocent. Additionally, at the post-conviction hearing counsel testified that the court's comment regarding defendant as a criminal was innocuous and he and petitioner decided not to raise the matter (PCRA pp.329, 372). For these reasons counsel cannot be deemed to have been ineffective for failing to raise a meritless claim. Real v. Shannon, 600 F.3d 302 (3d Cir.2012).

---

[13] See: ECF No.69 at p.15.

Durham's final allegation concerns the alleged cumulative effect of these alleged events. A "cumulative effect" claim is futile where, as here, there is no demonstration that counsel was ineffective. United States v. Pine, 2011 WL 6099559 (M.D.Pa. 2011).

The resolution of Durham's criminal prosecution, rested primarily on issues of credibility. As such it was within the exclusive province of the jury. United States v. John-Baptiste, 747 F.3d 186, 208 (3d Cir.), cert. denied 134 S.Ct. 2324 (2014). Nevertheless, while he attempts to argue here that counsel was ineffective, there is no showing made that his conviction resulted in a manner contrary to federal law as determined by the Supreme Court of the United States nor involved an improper application of that law. For this reason, his petition for a writ of habeas corpus will be denied, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

ORDER

AND NOW, this 24th day of August, 2015 for the reasons set forth in the foregoing Memorandum, the petition and amended petition of George M. Durham for a writ of habeas corpus (ECF Nos. 2 and 47) are DISMISSED, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is DENIED.

The parties are advised that pursuant to Rule 4(a) F.R.App.P any party desiring to file an appeal must do so within thirty (30) days of this date by mailing a notice of appeal to the Clerk, United States District Court, 700 Grant Street, Pittsburgh, PA 15219-1957.

s/ Robert C. Mitchell
United States Magistrate Judge